**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL MARBLE AND GRANITE, INC., et al., | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) ) | No. 10 C 2852 |
| v. | ) ) ) | Hon. Amy J. St. Eve |
| UNITED ORDER OF AMERICAN, BRICKLAYERS AND STONE MASONS LOCAL NO. 21 ILLINOIS, et al., | ) ) ) ) | |
| Defendants/Counter-Claimants. | ) ) ) | |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

The present case stems from labor-arbitration hearings that took place on February 18, 2009 (R. 31-1 at 13-15), and December 16, 2009 (R. 26-1 at 4-9), between Plaintiffs International Marble and Granite, Inc., et al. ("International Marble") and the Defendant labor organizations (collectively, "the Union"). The February 18 hearing concluded both that a collective-bargaining agreement ("CBA") bound Plaintiffs to its terms "since at least September 22, 2004" and that Plaintiffs were liable for any violations of the same. (R. 31-1 at 15.) The labor-arbitration board also observed that Defendants "may present a further claim against" Plaintiffs if they wish "to do so in order to claim violations or seek damages for specific conduct or individual jobs." (*Id.*) In rendering their decision ("the first decision"), the board observed that the "representatives of Local 21 explained that they were not seeking damages or any

1

monetary award through this grievance and hearing[,] but were only seeking a determination on their claims as to who is bound to the contracts and responsible for any violations of them." (*Id.* at 14.) Defendants served copies of the decision on Plaintiffs by letter of April 2, 2009. (R. 32 at 4.) Plaintiffs did not initiate any legal action to challenge the first decision within ninety days.

After holding a subsequent hearing on December 16, 2009, the board noted its prior determination as to the CBA's application to Plaintiffs and observed that it "did not consider it to be an issue before us." (R. 26-1 at 5.) The board then awarded $612,035.47 in damages to the Union (the "second decision"). (*Id.* at 8.) Plaintiffs filed a complaint to vacate the arbitration award on May 7, 2010. (R. 1.) This filing was within sixty days of the board's February 12, 2010, damages determination. (R. 49 at 4.)

Defendants have filed a motion for partial summary judgment as to the board's first decision. (R. 30.) They contend that, because Plaintiffs failed to challenge that decision within ninety days, the statute of limitations bars them from challenging it and from raising any defenses to Defendants' confirmation action. (R. 32 at 4-5.) Defendants oppose this argument, contending that the first decision was not a "mutual, final, and definite award under the Federal Arbitration Act," and thus did not trigger the ninety-day limitations period. (R. 49 at 4-9.)

Plaintiffs have also filed a cross-motion for summary judgment. (R. 47.) They submit that, if the Court agrees that the first decision was not final and appealable or that the one-year statute of limitations bars Defendants from confirming such an award, "Plaintiffs not signatory to the applicable collective bargaining agreements can successfully raise the defense that they never consented to the authority or jurisdiction of the JAB." (*Id.* at 1.)

For reasons explained below, the Court grants Defendants' motion for partial summary judgment (R. 30) and denies Plaintiffs' cross-motion for summary judgment (R. 47).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary-judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed. R. Civ. P. 56(e)(2) (requiring adverse party to "set out specific facts"). "The party opposing summary judgment . . . bears the burden of coming forward with properly supported arguments or evidence to show the existence of a genuine issue of material fact." *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006) (citations omitted).

# ANALYSIS

## I. The First Decision Was Final and Appealable

The Illinois Uniform Arbitration Act ("the IUAA") provides that, upon application of a party, a court shall vacate an arbitration award on one of five grounds. 710 ILL. COMP. STAT. 5/12(a). The statute requires a party to make such an application, however, "within 90 days after delivery of a copy of the award to the applicant." *Id.* at § 12(b). Federal law incorporates this provision through section 301 of the Labor Management Relations Act ("LMRA"). *See Plumbers' Pension Fund, Local 130, U.A. v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985) (citing *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966)).

The parties agree that the "Union mailed copies of the [first decision] to the Contractors on or around April 2, 2009" and that the "Contractors received the [first decision] shortly after April 2, 2009." (R. 30 at 4-5; R. 45 at 6.) The Union points out that Plaintiffs failed to bring a legal action to challenge that decision until May 2010, which was considerably beyond the IUAA's 90-day requirement. (R. 32 at 4-5.) As a result, Defendants argue, the law entitles them to summary judgment, confirming the first decision. (*Id.* at 5.) Specifically, the Union argues that, even if Plaintiffs "could conclusively demonstrate that they were not bound to the CBA and were not subject to the jurisdiction of the arbitration panel," such facts would be of no moment in light of Plaintiffs' failure to challenge the first decision within 90 days of receiving notice of the same. (*Id.*)

Plaintiffs agree that "Section 12(b) provides the appropriate limitations period for challenging arbitration awards." (R. 49 at 5.) They argue, however, that the first decision did not trigger the 90-day application requirement because that decision was not "mutual, final, and

4

definite" for the purpose of Section 10(a)(4) of the Federal Arbitration Act. (*Id.*) They summarize the operative law as follows:

> The finality of an award depends on "whether the award itself . . . is incomplete in the sense of having left unresolved a portion of the parties' dispute." *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 491 (7th Cir. 2005). Although the FAA uses the term "award" in reference to finality, a reviewing court must go beyond a document's title and "delve into its substance and impact to determine whether the decision is final." *Publicis Commun. v. True North Communs. Inc.*, 206 F.3d 725, 729 (7th Cir. 2000). Superficial technicalities should not be the basis for determining the finality of an arbitration award. *Olson*, 397 F.3d at 491-92. The terms "mutual" and "final" mandate that arbitrators resolve "the entire dispute . . . that is submitted to them." *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001).

(R. 49 at 6.)

On the basis of this law, Plaintiffs submit that it is clear that the first decision was not a final award and so the Court should grant summary judgment in their favor. (*Id.* at 7.) They note that the first decision addressed neither damages nor liability, and submit that the first decision was "no more than an interim order." (*Id.*) In particular, Plaintiffs rely on a discrepancy between the grievance that the Union filed with the JAB, which stated that the purpose of the grievance was to "decide whether any violations have occurred and, if so, to issue a remedy," and the issues that the JAB actually considered. (*Id.*) Plaintiffs therefore argue that the "December Hearing was merely a continuation of the February Hearing." (*Id.*)

The Court does not agree. Plaintiffs do not cite any authority that it is the extent to which the labor-arbitration board addresses all the issues raised by a party's grievance that dictates whether the board's decision is final. Indeed, pertinent case law is to the contrary. *See, e.g.*, *McKinney Restoration, Co. v. Ill. Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers*, 392 F.3d 867, 872 (7th Cir. 2004) ("Accordingly, where an arbitrator believes the

5

assignment is completed, the award is final and appealable, and the court may then vacate the award for that reason. Where the evidence establishes that the arbitrator does not believe the assignment is completed, the award is not final and appealable."); *Smart v. Int'l Broth. of Elec. Workers, Local 702*, 315 F.3d 721 725 (7th Cir. 2002) (explaining that one purpose of Section 10(a)(4) of the Federal Arbitration Act is "merely to render unenforceable an arbitration award that is . . . incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had)").

In the present case, the Court finds that the board intended its first decision to be final. (R. 31-1 at 13-15.) Even if the Union's grievance purported to determine whether a violation had occurred and, if so, to seek damages, the board's first decision made clear that the Union did not maintain that position at the hearing:

> Representatives of Local 21 explained they were not seeking damages or any monetary award through this grievance and hearing but were only seeking a determination on their claims as to who is bound to the contracts and responsible for any violations of them.

(R. 31-1 at 14.) The board then determined that a CBA bound Plaintiffs to its terms "since at least September 22, 2004" and that Plaintiffs were liable for any violations of the same. (R. 31-1 at 15.)

Based on this clear position, the board considered its first decision to be a final award independent of any subsequent pursuit of damages. The board explained that Defendants "*may* present a further claim against" Plaintiffs if they "wish[] to do so in order to claim violations or seek damages for specific conduct or individual jobs." (*Id.*) (emphasis added). This conditional language further supports that the board believed that it had resolved all issues that the parties had presented to it at the first hearing. After the Union subsequently filed a grievance, and after

6

holding a subsequent hearing on December 16, 2009, the board explained that it "did not consider [the first decision] to be an issue before us." (R. 26-1 at 5.) This suggests that it considered each decision to be independent.

In its first decision, the board believed that it had completed its assigned task—namely to render "a determination on [the Union's] claims as to who is bound to the contracts and responsible for any violations of them." (R. 31-1 at 14.) In its first decision, the board answered those questions, and merely acknowledged the possibility that the Union might—but was under no obligation to—"present a further claim." (*Id.* at 14-15.) The first decision was therefore final and appealable.[1]

Even if the first decision created some uncertainty for Plaintiffs as to whether it was a final, appealable award, the Seventh Circuit has explained the proper procedure in such a case: "[a] party who is uncertain about the finality or appealability of an arbitration award should err on the side of compliance with the FAA § 12, which is not onerous. The FAA authorizes a party to petition the district court if it believes that 'a mutual, final, and definite award' was not made." *Olson*, 397 F.3d at 492 (citations omitted).

---

[1] Plaintiffs contend that the present case "closely resembles" *Wellpoint Health Networks, Inc. v. John Hancock Life Ins. Co.*, 547 F. Supp. 2d 899 (N.D. Ill. 2008), *aff'd*, 576 F.3d 643 (7th Cir. 2009). (R. 49 at 5-6.) The Court disagrees. In that case, the parties conducted the arbitration in two separate phases in which the first determined liability and the second addressed damages. *Wellpoint*, 547 F. Supp. 2d at 906. The district court found that the "substance and effect of the panel's Phase I ruling indicates that it is not a final award subject to judicial review." *Id.* at 908. In *Wellpoint*, however, the parties agreed to conduct the hearing in two phases and the arbitrators obliged. *Id.* at 906. Indeed, the board described its liability determination as "Interim Rulings on Phase I," thus clearly revealing that its decision did not amount to a final reward. *Id.* For the reasons described above, the first decision in the present case is self-contained and resolved all the issues that the board believed that the parties had presented to it. The first decision in the instant case was therefore final and appealable.

## II. The Statute of Limitations in the FAA Does Not Bar the Union from Confirming the First Decision

Plaintiffs next submit that, even if the board's first decision constituted a mutual, final, and definite award, Section 9 of the FAA bars the Union from confirming the first decision. (R. 49 at 10.) Section 9 provides that, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . ., then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Observing that the Union has moved to confirm the first award "long after one year had passed," Plaintiffs conclude that Section 9 requires the Court to grant summary judgment in their favor. (R. 49 at 10.)

Plaintiffs acknowledge the fact of a Circuit split, however, which complicates their argument. Courts are divided on the question whether the one-year period specified in Section 9 of the FAA is mandatory or permissive. *Compare Val-U Const. Co. of S. Dakota v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir. 1998) (finding that the one-year period is permissive); *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 156 (4th Cir. 1993) (same); *Wachovia Sec., Inc. v. Gangale*, 125 Fed. App'x 671, 676 (6th Cir. 2005) (same) *with Photopaint Techs., L.L.C. v. Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003) ("We therefore hold that section 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA."). Both parties agree that the Seventh Circuit has not addressed the issue. (R. 49 at 11; R. 53 at 11.) In 2008, a court in this district explored this body of law and concluded that the position adopted by the Fourth and Eighth Circuits is the better

8

one. *Kolowski v. Blatt, Hasenmiller, Leibsker & Moore, L.L.C.*, No. 07-CV-4964, 2008 WL 4372711, at *2-3 (N.D. Ill. Mar. 20, 2008).

As an initial matter, however, the Union raises the threshold question whether Section 9 of the FAA provides the operative limitations period at all. (R. 53 at 11-13.) Plaintiffs brought the present case under Section 301(a) of the LMRA. (R. 26 at 3.) The Court therefore agrees with the Union that the FAA does not apply. *See, e.g.*, *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union*, 242 F.3d 52, 54 (2d Cir. 2001) (holding that "the FAA does not apply" because "Coca-Cola's action invoked our federal question jurisdiction under Section 301"); *Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp.*, 410 F.3d 204, 207 n.2 (5th Cir. 2005) ("[M]ost courts . . . adhere to the traditional view that suits arising under Section 301 and concerning collective bargaining agreements are outside the scope of the FAA.").

As this case arises under Section 301(a) of the LMRA, and because Illinois has the most closely analogous law with respect to the statute of limitations, the pertinent statute of limitations is that of the relevant state. *See, e.g.*, *UAW v. Hoosier Cardinal Corp.* 383 U.S. 696, 704-05 (1966) ("[T]he timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations."); *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 211-12 (7th Cir. 1996) ("Claims asserted under § 301 of the LMRA are not governed by a specific statute of limitations, and therefore courts reviewing claims under that section must borrow an appropriate limitations period. When federal statutes are silent as to limitations periods, federal courts usually borrow the most closely analogous statute of limitations from state law. . . . For [straightforward § 301 cases], borrowing an applicable state statute of

9

limitations . . . remains the rule."); *Sheet Metal Workers Int'l Ass'n, Local Union No. 36 v. Systemaire, Inc.*, 241 F.3d 972, 975 (8th Cir. 2001) ("Although § 301(a) of the [LMRA] contains no statute of limitations . . . we have held that a 'district court must borrow a statute of limitations from state law most analogous to the dispute.'") (citations omitted); *Serv. Employees Int'l Union Local No. 36 v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 409 (3d Cir. 1982) ("We therefore conclude that actions to . . . confirm an arbitration award under section 301 should be governed by the relevant state statute of limitations"); *Unite Here Local 26 v. Taj Hotel Boston*, 731 F. Supp. 2d 95, 101 (D. Mass. 2010) ("The petition to confirm and enforce Baptiste's arbitration award is brought under § 301(a) of the LMRA. Federal courts look to the FAA for guidance in interpreting the LMRA. However, while the FAA may be consulted in the formulation of federal substantive law it is not binding in cases arising under section 301. . . . In Massachusetts, the statute authorizing actions to confirm arbitration awards contains no time limitation.") (citations and quotations omitted); *see also Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 336 (3d Cir. 1999) (holding that, because Section 301contains no limitations period, the court should adopt the most analogous state statute of limitations); *United Gov't Sec. Officers of Am. v. Special Ops. Grp., Inc.*, 436 F. Supp. 2d 790, 794 (E.D. Va. 2006) (observing that "a court may borrow a federal statute of limitations where the federal statute is 'clearly' more analogous to the Section 301 claim than available state statutes are").

Thus, even if Plaintiffs are correct that the Second Circuit's decision is the right one—such that the FAA's one-year period is indeed a statute-of-limitations provision—it does not follow that the Court should adopt that one-year limitation in lieu of the relevant state statute

of limitations. This is not a case in which there is no analogous state law regarding the statute-of-limitations period for confirming an arbitration award. The IUAA provides that, "[u]pon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award. . ." 710 ILL. COMP. STAT. § 5/11. Because the IUAA does not purport to provide a statute of limitations within which a party must bring an action to confirm an arbitration award, the law does not bar the Union's action to confirm the first decision. *See Excavating, Grading, Asphalt, Private Scavengers, Local 731*, No. 00-CV-5576, 2001 WL 138932, at *2 (N.D. Ill. Feb. 16, LMRA2001) ("In the Illinois Arbitration Act, there is no time limitation on actions to confirm or enforce an arbitration award. Therefore, Zengeler's motion . . . is not barred by any statute of limitations."); *cf. Taj Hotel*, 731 F. Supp. 2d at 101.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for partial summary judgment and denies Plaintiffs' cross-motion for summary judgment (R. 47).

**Dated:** March 16, 2011

        **ENTERED**

        */s/ Amy J. St. Eve*
        **AMY J. ST. EVE**
        **United States District Court Judge**